IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BECKY ARPS, RENE ARTMAN, ADAM BOHN, RITA HEARD DAYS, EDWARD ENGLER, TIM FITCH, MARK HARDER, LISA KALISKI, AMY POELKER, JUNE SCHMIDT, KELLY STAVROS, ERNIE TRAKAS, and RICHARD WOLFE, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT L. CHAMBERS, MARSHA E. HAEFNER, FLORENCE L. HILL and PATRICIA YAEGER, in their capacity as members of the St. Louis County Board of Election Commissioners, the ST. LOUIS COUNTY BOARD OF ELECTION COMMISSIONERS, <br><br> Defendants. | Case No. 4:21-cv-01406 NAB <br> *as previously consolidated from* <br> *4:21-cv-01410* |

## ARPS PLAINTIFFS – TRIAL BRIEF

COMES NOW Becky Arps, Rene Artman, Adam Bohn, Rita Day Heard, Tim Fitch, Edward Engler, Mark Harder, Lisa Kaliski, Amy Poelker, June Schmidt, Kelly Stavros, Ernie Trakas, and Richard Wolfe ("Arps Plaintiffs"), by and through the law offices of Spooner Law, LLC, and for the Arps Plaintiffs – Trial Brief submit the following:

### INTRODUCTION

The Bowman Plaintiffs request the Court adopt Democratic Map v3. The Arps Plaintiffs request the Court adopt either Republican Map v1 or the Proposed Compromise Map. Expert witness Dr. David Kimball did not draw a map and he opines that all 3 maps satisfy the County Charter mandate of seven (7) county council districts equal in population as near as possible, that each district is composed of contiguous territory as compact as may be, and that the districts do

1

not violate the Constitutions of the United States and Missouri, or the Voting Rights Act.  Dr. Kimball concludes that Democratic Map v3 should be adopted by the Court because it does a better job of protecting municipal boundaries, despite the average population deviations in Republican Map v1 and the Compromise Map are less then Democratic Map v3, the racial composition of population and VAP in District 1 is better protected by Republican Map v1 and the Compromise Map, the compactness scores of Republican Map v1 and the Compromise Map are better than Democratic Map v3, and Republican Map v1 makes the least changes while Democratic Map v3 makes the most changes.  Moreover, Democratic Map v3 puts County Councilperson Tim Fitch outside of his current District 3 while Republican Map v1 and the Compromise Map keep all County Councilpersons in their current districts.[1]

<u>Dr. Kimball and the parties agree Democratic Map v3, Republican Map v1, and the Proposed Compromise Map comply with the County Charter and do not violate any constitutional principle, federal or state law.  The disagreement centers on the Bowman Plaintiffs reliance on municipal boundaries as a "traditional" redistricting factor to support the adoption of Democratic Map v3 and whether the Bowman Plaintiffs use of municipal boundaries in Democratic Map v3 is simply a cover for political motivations to move Mr. Fitch outside of District 3 and/or is being utilized to force the Court to establish district boundaries rather than have an agreement through the political process described in the County Charter.</u>

Despite the pathway this Court and the Eighth Circuit have provided since 1992, the St. Louis County Bipartisan Reapportionment Commission ("Commission") could not reach an agreement on a map/plan to reapportion the County Council districts.  In 1992 Judge Hamilton reapportioned the council districts.  *See Fletcher v. Golder*, 959 F.2d 106, 109 (8th Cir. 1992)(Court held evidence of political motivation irrelevant when deciding the factors of

---

[1] Arps Plaintiffs understand that the Court is free to not adopt any of the 3 maps and that it can draw its own map.

2

equality, compactness and racial fairness, which were the only factors before the Court).  In 2002 Judge Perry reapportioned the council districts.  *See Corbett v. Sullivan*, 202 F. Supp.2d 972, 987-88 (E.D. Mo. 2002)(Finding relevant the evidence that challenged the genuineness of the claim that respect for municipal boundaries makes a plan better and holding that respect for municipal boundaries is neither a legislative factor nor a historical factor in the St. Louis County redistricting process.).   Most recently, in 2012 Judge Adelman reapportion the county council districts.  *See Stenger v. Kellett*, 2012 WL 601017, *13 (E.D. Mo. February 23, 2012)(Following the least change method the Court adopted a map emphasizing it be free of political considerations).

Notwithstanding the guidance of *Fletcher*, *Corbett* and *Stenger*, the Court is once again called on to adopt or draw a map when the task should have been completed by the Commission but for the Democratic members' political considerations.  Given *Fletcher*, *Corbett* and *Stenger* and the facts regarding the work of the Commission, the composition of the various maps/plans, and the manner in which the maps/plans were devised, one would believe at least two Democratic Commission members could have put political considerations aside and reached a consensus on a new map.  Unfortunately, the Commission has a history of partisan influences that have not changed over the past 50 years.  As will be demonstrated at trial, the Commission members cannot even agree to disagree.

## STATEMENT OF FACTS

### A.     Legal Considerations

Plaintiffs incorporate by reference all facts set forth in the Joint Stipulation of Uncontested Facts [ECF No. 46].  The County Charter requires the reapportionment of the seven St. Louis County Council Districts (the "Districts") following the completion of every United

States Decennial Census ("Census").  The County Charter authorizes the County Executive to appoint individuals to the Commission to accomplish this task.  In the event the Commission fails to reapportion the population, the Charter provides no mechanism by which the County Council can redraw the Districts.  Following completion of the 2020 census the County Executive appointed members to the Commission in accordance with the Charter.  The Commission's term expired without any agreement or adoption of a reapportionment plan/map to remedy the population inequities between the Districts by virtue of the 2020 Census data.  According to the 2020 Census, the current Districts are not equal in population, and in fact, deviate by as much as 15.05%.  As such, the current Districts violate the Constitutional requirement of "one person, one vote" and therefore must be redrawn.

### B. Factual Considerations

Most of the facts are not in dispute.[2]  The Commission met on November 8, 2021.  The Democratic members of the Commission presented Democratic Map v1.  Democratic Map v1 applied municipal boundaries as its primary "traditional" redistricting factor resulting in a map that violated the County Charter mandates, the United States and Missouri Constitutions, and the Voting Rights Act.  The Districts in Democratic Map v1 were not equal in population, it changed the minority percentage in District 1 (Ms. Heard Days) from 74% to about 45%, and it drew Mr. Fitch out of District 3.  The Republican members of the Commission presented Republican Map v1.  Republican Map v1 followed the least change method (identified in *Stenger*) and complied with the County Charter mandates, the United States and Missouri Constitutions, and the Voting Rights Act.

---

[2] At trial the evidence to be presented can include the work of the Commission, the composition of the various plans/maps, and the manner in which the plans/maps were developed.  *See Fletcher*, 959 F.2d at 108.  The Commission meetings are recorded and available for viewing.

4

The Commission next met on November 15, 2021.  The Democratic members of the Commission presented Democratic Map v2.  Democratic Map v2 complied with the County Charter mandates, the United States and Missouri Constitutions, and the Voting Rights Act.  Democratic Map v2 balanced the population equality, changed the minority percentage in District 1 to be closer to 70%, and included Mr. Fitch in District 3.  The Republican members of the Commission presented Republican Map v2.  Republican Map v2 focused on compromise and following the least change method adjusted some Districts based on municipal boundaries.  During the meeting Democratic member Dana Sandweiss remarked that the maps had become incredibly similar and moved to create a bipartisan committee of three members from each political party to look at the areas of disagreement and to report back recommendations at the next meeting.[3]

The bipartisan committee met on November 21, 2021 for approximately two hours.  What transpired at the meeting is subject to dispute.  The attendees agree they worked on a map and that they would take back to their groups what had transpired.  The Republican members assert that when the meeting ended the bipartisan committee had drawn a compromise map that each would take back to their group for approval.  It is not clear what the Democratic members reported back to their group, as Chairman Bowman only stated that a majority of the group did not agree, however, while they agree no compromise was reached they disagree about whether a map was drawn.[4]  Nevertheless, following the meeting Republican member Adam Bohn circulated a map to his group called the Compromise Map which Mr. Bohn also sent to Mr.

---

[3] On November 15, 2021, Democratic member Brian Wingbermuehle posted on social media that the Commission is close to a historic deal on a bipartisan map.

[4] Mr. Wingbermuehle testified a map had been drawn that was to be shared with his group while Mr. Bowman and Ms. Meredith testified no map existed to be shared with the group.

5

Wingbermuehle to be shared amongst his group, and Mr. Bohn sent the Compromise Map to St. Louis County and to Mr. Bowman, Mr. Wingbermuehle and Ms. Meredith stating it was the Compromise Map the bipartisan committee came up with and was shared with their groups.[5]

It is undisputed that the next day St. Louis County identified the Compromise Map on its website as the Proposed Compromise Map – 11/21/21, that communications about the map identified it as the Compromise Map, that it was called the Compromise Map at the November 22, 2021 Commission meeting, and that prior to January 3, 2022, no one raised any concern with the identification of the map as the Compromise Map or the Proposed Compromise Map – 11/21/21.[6]

At the final meeting of the Commission on November 22, 2021, the Democratic members of the Commission presented a new map identified as Democratic Map v3 as their final map. While Democratic Map v3 complied with the County Charter mandates, the United States and Missouri Constitutions, and the Voting Rights Act, it changed Democratic Map v2 once again removing Mr. Fitch from District 3 purportedly to do a better job of recognizing municipal boundaries.  The Republican members of the Commission presented Republican Map v1 as their final map.  Neither map received a majority vote.  After the maps were voted on a Republican member wanted to have a vote on the Compromise Map, and a motion was made to put the Compromise Map up for a vote.  The motion failed and subsequently the term of the Commission ended without a new map/plan.

---

[5] Apparently, after the bipartisan meeting Mr. Wingbermuehle posted a tweet on social media with a group selfie with words to the effect that there was a historic opportunity for the Commission to reach an agreement.

[6] On January 3, 2022, Ms. Sandweiss directed St. Louis County to change the identification on its website of the Proposed Compromise Map – 11/21/21 because it was "in fact a Republican Map".  The actions of Ms. Sandweiss are addressed in the Arps Plaintiffs' First Motion in Limine, incorporated herein by reference, so this matter will not be addressed further.

## ARGUMENT

A.  **The Existing County Council Districts Violate the One Person One Vote Requirement so Judicial Relief is Appropriate**

The Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment requires "equal representation for equal numbers of people, without regard to race, sex, economic status ... . " *Reynolds v. Sims*, 377 U.S. 533, 561 (1964).  This constitutional mandate or "one person, one vote" applies to local governmental elections, precluding election of local government officials from districts of disparate population.  *Avery v. Midland County, Texas*, 390 U.S. 474, 484-85 (1968).

The current boundaries of the Districts were ordered by Judge Adelman in *Stenger* who adopted a map drawn by Dr. Kimball using the least change method that was free from political consideration.  *Stenger* at \*4.  According to *Stenger* the total population of St. Louis County based on the 2010 Census was 998,956 and the ideal population in each District was 142,708.  The current populations of the Districts are now unequal as a result of population changes since the 2010 Census.  According to the 2020 Census the total population of St. Louis County is 1,004,125 so the ideal population in each District would be 143,446.  The evidence shows District 1 lost 15,806 people between 2010 and 2020 and District 4 lost 3,676 people while District 2 gained 1,778 people, District 3 gained 5,351 people, District 5 gained 5,789 people, District 6 gained 2,300 people, and District 7 gained 4,267 people.  Based on the 2020 Census, the maximum population deviation between the most populated district and the least populated district is 15.05%, which exceeds the deviation permissible under the Fourteenth Amendment. *See Voinovich v. Quilter*, 507 U.S. 146, 161 (1993)(reaffirming the Court's previous holding that a reapportionment plan with a maximum population deviation greater than 10% creates a prima facie case of discrimination .... "); *see also Connor v. Finch*, 431 U.S. 407 (1977)(voiding a

7

Mississippi plan with a 16.5% total deviation in state senate districts).  Such a degree of population disparity also violates Article I, Section 2 of the Missouri Constitution.  *See Armentrout v. Schooler*, 409 S.W.2d 138, 144 (Mo. 1966).  Consequently, there exists no basis to suggest that the Districts are somehow excused from the Constitutional requirement of "one person one vote" so the Districts must be redrawn.

Section 2.035 of the County Charter provides for the establishment of a Bipartisan Reapportionment Commission each tenth year after 1981.  The Commission was properly appointed and met several times but failed to adopt a map/plan and adjourned without scheduling any more meetings.  According to Section 2.035 of the County Charter, the authority of the Commission to adopt a map/plan expired.  There is no method described in the County Charter for apportioning Districts if the Commission fails to adopt a plan/map.   "[J]udicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Reynolds,* 377 U.S. at 586.

It is appropriate for the Court to accept jurisdiction and enter an order to remedy the constitutional defects existing based on the 2020 Census.  *See Corbett*, 202 F.Supp.2d at 980; *Fletcher*, 959 F.2d at 108; *see also Nash v. Blunt*, 797 F. Supp. 1488, 1491-92 (W.D. Mo. 1992)(explaining that although redistricting of voting units, including those of county officials, is "primarily a legislative function," in some instances courts become "actively engaged in adopting a redistricting plan when other governmental bodies fail to, or are unable to, do so." *citing* Mo. Const. Art. III, § 7, ,r 3).  The Court must order redistricting in this case because no legislative mechanism exists to remedy the Constitutional violations resulting from the current population disparity among the Districts.

8

B.  **Republican Map v1 and the Compromise Map Comply with the County Charter and Do Not Violate Any Constitutional Principle, Federal or State Law**

When a court is required to draw a reapportionment plan it must proceed with the utmost fairness. When a federal court "is left with the unwelcome obligation of performing in the legislature's stead," its "task is inevitably an exposed and sensitive one that must be accomplished circumspectly, and in a manner free from any taint of arbitrariness or discrimination." *Connor*, 431 U.S. at 414 (While a legislative body can consider traditional policies a federal court cannot compromise sometimes conflicting apportionment policies.). *See Baker v. Carr*, 369 U.S. 186, 259-60 (1962)(While political objectives may be chief during legislative negotiations for devising a reapportionment plan, federal courts are not forums for political debate, nor should they resolve themselves into state constitutional conventions or legislative assemblies.); s*ee also Chapman v. Meier*, 420 U.S. 1, 26-27 (1975)(A court ordered plan must be held to a higher standard than a legislative plan and any deviation from approximate population equality must be supported by a historically significant policy and must achieve population equality with little more than *de minimis* variation.).[7]

When drawing districts, the primary concern is population equality. *See Reynolds*, 377 U.S at 567-68 (Population is the starting point for consideration and the controlling criterion for judgment in legislative controversies.); *Corbett*, 202 F. Supp.2d at 981 (quoting *Reynolds*, 377 U.S. at 577)("The court's primary obligation is to ensure that the districts are substantially equal in population and thereby comport with the principle of 'one-person, one vote."). A plan should

---

[7] These principles in *Connor* and *Chapman* are recognized in *Fletcher*, *Corbett* and *Stenger*. *See Fletcher v. Golder*, 1992 WL 105910, *9 (E.D. Mo. February 24, 1992)(when the legislative body cannot adopt a plan court must base its decision on the Constitution and the laws and not become embroiled in partisan political questions). *See also Corbett*, 202 F. Supp.2d at 981; *Stenger*, 2012 WL 601017 at *9

9

ordinarily achieve the goal of population equality with little more than *de minimis* variation from strict population equality. *Corbett*, 202 F.Supp.2d at 981 (quoting *Chapmen*, 420 U.S. at 981).

In this consolidated action, Republican Map v1 and the Compromise Map follow the least change method and achieve equality of population with a maximum deviation well within the approximate margin of error.  Moreover, the population of the Districts deviate from the ideal population by an average of 178 people and 277 people respectively.  The population deviations would be considered *de minimis* under all current legal authority.

The County Charter require the Districts "be composed of contiguous territories as compact as may be."  *Fletcher*, 1992 WL 105910 at *8 (citing Mo. Const. Art. 3, § 2; County Charter § 2.035); *see Fletcher*, 959 F.2d at 110.  The Supreme Court has likewise held that a federal court called upon to effect a redistricting remedy must use geographic compactness as a factor because a district court has a much narrower mandate than a legislative body when constructing a redistricting plan.  *Conner*, 431 U.S. at 414-15; s*ee Wynche v. Madison Parish Police Jury*, 635 F.2d 1151, 1163 (5th Cir. 1981)(A district court should fix boundaries that are compact, contiguous, and preserve the natural, political and traditional representation.).

Republican Map v1 and the Compromise Map satisfy the compactness requirement of the County Charter.  According to Dr. Kimball, using the "population polygon" measure for compactness, the measure for the Districts average .90 in the Republican Map v1 and in the Compromise Map while measuring .86 in Democratic Map v3 (in Corbett and Stenger the measures were .91)  Likewise, the Districts in Republican Map v1 and in the Compromise Map are "contiguous" as one could walk to each part of each district without having to go through another district.

Finally, Republican Map v1 and the Compromise Map comply with the Voting Rights Act.  In redistricting cases, courts should ensure that any redistricting plan adopted adheres to the Voting Rights Act of 1965, 42 U.S.C. §1973 (the "VRA").  *See Fletcher*, 959 F.2d at 109-10; *Stenger*, 2012 WL 601017 at *11.  Republican Map v1 follows the least change method with *de minimis* changes from the boundaries used in *Stenger* case and in the *Corbett* case.  As the maps in Stenger and Corbett complied with the VRA, likewise Republican Map v1 complies with the VRA.  While the boundaries in the Compromise Map were achieved by a different method, the evidence will show that the Compromise Map also complies with the VRA.

Following the least change method Republican Map v1 is modeled on the boundaries ordered by Judge Adelman in *Stenger* which followed the least change method and followed the boundaries ordered by Judge Perry in *Corbett*.  Republican Map v1 did not take into consideration any factors other than those identified in the County Charter.  Republican Map v1 contains Districts that are equal in population, compact and contiguous, and comply with the VRA.  Republican Map v1 is free from political considerations and only uses historical and traditional principles applied in St. Louis County redistricting.

The Compromise Map contains Districts that are equal in population, compact and contiguous, and it complies with the VRA.  While the Compromise Map considers the least change method, the Compromise Map was drawn based on Democratic Map v2 and Republican Map v2 and simply sought to balance the differences.  Regardless of whether the Commission members reached an agreement on the Compromise Map, the Compromise Map does present a legally acceptable map/plan.

11

### C.   Municipal Boundaries Are Neither a Historical or Traditional Factor When Redistricting and Are Being Used as a Cover For Political Considerations

Counsel for Rita Day Heard has submitted a Fifth Motion in Limine addressing the issue of the Bowman Plaintiffs reliance on municipal boundaries. Counsel will not repeat the arguments, and incorporate the Fifth Motion in Limine as if fully set out herein. The Arps Plaintiffs will briefly address several points, that municipal boundaries are not a historical or traditional redistricting factor, that the Court cannot take into consideration any factors besides those contained in the County Charter, that should the Court take into consideration municipal boundaries there is insufficient evidence to support same and it would interject politics, and that Democratic Map v3's reliance on municipal boundaries as a community of interest is a cover for political considerations.

Judge Perry previously addressed the use of municipal boundary lines as a redistricting factor in *Corbett* and clearly stated municipal boundary lines are not a historical or traditional factor to consider when redistricting. This reasoning is consistent with the Supreme Court's decisions *Connor, Baker, Chapman* and *Abrams v. Johnson*, 521 U.S. 74 (1997), which all found that a court called on to redistrict is limited to legislative principles unless it can be shown that other factors are needed to achieve population equality or to protect minority voting interests. Republican Map v1 and v2, the Compromise Map, and Democratic Map v2 achieve population equality and protect minority voting interests without the need to consider municipal boundaries as a community of interest. The case law also makes clear that the use of a factor such as municipal boundaries as a community of interest would be interjecting a political partisan question into redistricting.[8]

---

[8] It should be pointed out that the Bowman Plaintiffs are interchanging the use of municipal boundaries with the concept of communities of interest. Municipal boundary lines, like major throughfares, rivers, and other political subdivisions, are acceptable to use for a boundary line because they are natural markers.

12

Even if the use of municipal boundary lines not as a natural boundary but as a traditional community of interest is acceptable, *Corbett* makes clear that sufficient evidence must be submitted to support such a showing. The Bowman Plaintiffs cannot make such a showing. The Bowman Plaintiffs' claims are premised on a person's status as a resident of a municipality and the interaction between municipal government and County government. This reality has existed for over a century, and not only does the County Charter not take these factors into consideration (despite the suggestions by Judge Hamilton and Judge Perry to make such changes to the County Charter), no case has considered the typical relationship between a municipal resident and the County important.

Finally, it will be established at trial that the Bowman Plaintiffs reliance on municipal boundaries as a community of interest to support Democratic Map v3 is pretextual and is being used for political considerations. The Bowman Plaintiffs will be unable to present credible evidence to support why Mr. Fitch is drawn out of District 3, or why they couldn't reach an agreement, or why it was so important to change the map identifications other than to mislead the Court and prejudice the Arps Plaintiffs submission of Republican Map v1 and/or the Compromise Map.

## **CONCLUSION**

Legislative action should be brough if the residents of the County desire to have undivided municipalities within a district. Based on the foregoing, the Arps Plaintiffs request the Court adopt Republican Map v1 and/or the Compromise Map, or alternatively, if the Court determines it must draw a map, that the map be drawn following the least change method without consideration of municipalities as a historical factor or "traditional" community of interest.

SPOONER LAW, LLC


By: */s/ Jack B. Spooner*
    Jack B. Spooner     #38382MO
    34 North Brentwood Blvd., Suite 210
    St. Louis, Missouri 63105
    Phone: (314) 725-4300
    Facsimile: (314)725-4301
    Email: jbs@spoonerlawllc.com
    ***ATTORNEYS FOR ARPS PLAINTIFFS***

## CERTIFICATE OF SERVICE

The undersigned certifies that he signed the original of the foregoing pleading and that on this 30th day of January 2022 a copy of same was served on all counsel of record **XX** by electronic transmission through the CM/ECF system and/or **XX** by electronic transmission to the following:

**Gerald F. Greiman**
**Thomas W. Hayde**
SPENCER FANE LLP
Email: ggreiman@spencerfane.com
Email: thayde@spencerfane.com
*Attorneys for Bowman Plaintiffs*

**Steven W. Garrett**
**Edward J. Sluys**
CURTIS, HEINZ, GARRETT & O'KEEFE, P.C.
Email: sgarrett@chgolaw.com
Email: esluys@chgolaw.com
*Attorneys for Defendants*

**Jane E. Dueker**
JANE DUEKER, LLC
Email: janedueker@gmail.com
*Co-counsel for Arps Plaintiffs*
*Rita Heard Days*


        */s/Jack B. Spooner*