THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BECKY ARPS, RENE ARTMAN, ADAM BOHN, RITA HEARD DAYS, EDWARD ENGLER, TIM FITCH, MARK HARDER, LISA KALISKI, AMY POELKER, JUNE SCHMIDT, KELLY STAVROS, ERNIE TRAKAS, and RICHARD WOLFE,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT L. CHAMBERS, MARSHA E. HAEFNER, FLORENCE L. HILL and PATRICIA YAEGER, in their capacity as members of the St. Louis County Board of Election Commissioners, the ST. LOUIS COUNTY BOARD OF ELECTION COMMISSIONERS,<br><br>Defendants. | **Case No. 4:21-cv-01406 NAB**<br>*as previously consolidated from 4:21-cv-01410* |

**ARPS PLAINTIFFS'
REPLY MEMORANDUM FOR ATTORNEY'S FEES AND COSTS**

COMES NOW Arps Plaintiffs, by and through the law offices of Spooner Law, LLC ("Counsel"), and for Arps Plaintiffs' Reply Memorandum for Attorney's Fees and Costs hereby submit the following relevant argument and citations to authorities on which Arps Plaintiffs rely to support the basis and reasons for an award of attorney's fees and nontaxable costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and E.D. Mo. L. R. 8.02, and to illustrate that Counsel's fees are reasonable and not excessive.[1]

---

[1] Capitalized terms used in Arps Plaintiffs' Reply Memorandum for Attorney's Fees and Costs ("Reply") shall have the same meaning as designated in the Motion and Memorandum for Attorney's Fees and Costs [ECF No. 88].

1

I       INTRODUCTION

Arps Plaintiffs filed a Motion and Memorandum for Attorney's Fees and Costs [ECF No. 88] and a Supplement to Motion and Memorandum for Attorney's Fees and Costs [ECF No. 91] (together the "Arps Motion"). Bowman Plaintiffs filed a Motion for Award of Attorney Fees and Costs [ECF No. 84] and a Memorandum in Support of Their Motion for Award of Attorney Fees and Costs [ECF No. 85] (together the "Bowman Motion"). Plaintiff Days filed a Motion and Memorandum for Attorney's Fees and Costs [ECF No. 89] (the "Days Motion"). Intervenor St. Louis County filed a Response to Plaintiffs' Motion for Attorneys' Fees and Costs [ECF No. 93] (the "Intervenor Response"). Defendants comprising the St. Louis County Board of Election Commissioners did not file a pleading in accordance with E.D. Mo. L. R. 8.02.

Intervenor does not object to an award of attorney's fees and agrees the lodestar amount should be calculated by multiplying the reasonable hourly rate by the number of hours reasonably expended. Intervenor Response, ECF No. 93, Page ID#714. Therefore, there is no reason to address issues concerning the right to an award of attorney's fees and prevailing party, or to address all of the lodestar factors. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-435 (1983); *Fernandez v. St. Louis County, Missouri*, 538 F. Supp. 3d 888, 905 (E.D. Mo. 2021). The gravamen of the Intervenor Response is that attorney's fees are excessive and should be reduced to a reasonable amount.

Arps Plaintiffs will not repeat any of the arguments presented in the Arps Motion, the Bowman Motion, or the Day Motion, and by reference adopt said arguments herein as if fully set out. The purpose of this Reply is to address the Intervenor Response, particularly, to illustrate that the services provided were necessary, the attorney's fees charged are reasonable, and Counsel's hourly rate is reasonable and within prevailing market rates in the St. Louis area.

II    LEGAL STANDARD

Intervenor principally argues that the hours worked are excessive, redundant, or otherwise unnecessary, and the hourly rate should be reduced to $300. Intervenor Response, ECF No. 93, Page ID#716, 718. This Court has broad discretion when determining appropriate hourly rates and may rely upon its "own experience and knowledge" when doing so. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). "[W]hen fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates." *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005). "A reasonable fee is one that is adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys." *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). When determining whether a case was over-lawyered, "[t]he trial judge should weigh the hours claimed against his [or her] own knowledge, experience, and expertise of the time required to complete similar activities." *Gilbert v. City of Little Rock*, 867 F.2d 1063, 1066 (8th Cir. 1989).

III    ARGUMENT

1. **THE HOURS BILLED ARE REASONABLE AND THE SERVICES PERFORMED WERE NECESSARY AND NOT EXCESSIVE OR REDUNDANT**

    A.    **Intervenor Was Admonished in 2002 and 2012 That the Political Process Failed and Needed to be Changed to Avoid Future Litigation.**

Intervenor unjustly suggests that Arps Plaintiffs are seeking to be awarded for excessive hours and billing rates and that the award of attorney's fees should be reduced to "serve to encourage future counsel to spare no expense when handling the next reapportionment case." Intervenor Motion, ECF No. 93, Page ID#718. Apparently, Intervenor seeks to blame the citizens of St. Louis County for a process Intervenor controls and which Intervenor refuses to

3

change despite previously being cautioned the process fails the citizens of St. Louis County and should be changed to avoid future litigation.

In 2002 Judge Perry sternly advised Intervenor that the readjustment process was a failure and needed change. "[F]or some reason I cannot begin to understand…an unelected federal judge [who] should not be making political decisions…they should certainly establish a new system for deciding the issue before the next census comes around." *Corbett v. Sullivan*, 202 F. Supp. 2d 972, 975 (E.D. Mo. 2002). "This case arose because the political process in St. Louis County failed." *Corbett v. Sullivan*, No. 4:01-CV-2006 [ECF No. 75, Page ID#87].

Ignoring the warning flags in *Corbett*, Intervenor was told by Judge Adleman in 2012 that the process failed and needed change. Judge Adleman quoted Judge Perry's admonition in *Corbett* (as stated above) and went on to find "[o]bviously, the same situation continues to exist in St. Louis County in 2012 as has existed since 1982." *Stenger v. Kellett*, 2012 WL 601017, at *8, 9 (E.D. Mo. Feb. 23, 2012).

Intervenor had ample opportunity since 2002 to change the reappointment process but opted not to do so. The citizens of St. Louis County have an unqualified right to pursue this action when St. Louis County government fails them. It is disingenuous for Intervenor to complain about having to pay significant attorney's fees and costs when the reapportionment process ends up in federal court, particularly in light of the attorney fee awards in *Corbett* and *Stenger*.

In 2002 three parties sought a total of $287,044.00 for attorneys' fees based on 1,390 hours of service. *Corbett v. Sullivan*, No. 4:01-CV-2006 [ECF No. 75, Page ID#90, 91]. Judge Perry approved without reduction for party one 140 hours at $200 for $27,980 and for party two 350 hours at underlying rates from $115 to $280 per hour for $62,612.50 (blended hourly rate of

4

$197.50).  Judge Perry reduced the request from party three to $62,612.50 which was the same amount Judge Perry awarded to party two.  The total amount Judge Perry ordered Intervenor to pay for attorneys' fees was $153,205 based on 840 approved hours of service.[2]  *Id*.

In 2012 the plaintiffs sought a total of $119,673 for attorneys' fees based on 408 hours of service.  *Stenger v. Kellett*, No. 4:11-CV-2230 [ECF No. 59, Page ID#361; ECF No. 59-1, Page ID# 370].  Judge Adelman awarded, without reduction, the lead counsel's fee based on 97.7 hours at $400.  Judge Adelman reduced the hours billed by associate attorneys and awarded fees based on 155.1 hours at rates of $280 and $225 per hour.  *Stenger v. Kellett*, No. 4:11-CV-2230 [ECF No. 82, Page ID#603].  The total amount Judge Adelman ordered Intervenor to pay for attorneys' fees was $78,246.00 based on 252.8 approved hours of service.  *Id*.

Intervenor was previously warned to change the reapportionment process, and Intervenor knew that contested reapportion litigation could easily exceed 300 hours of service and payment of hundreds of thousands of dollars in attorneys' fees and costs.  Intervenor should not be allowed to deflect blame on the Arps Plaintiffs for having to employ Counsel, nor should Intervenor be allowed to hamper future attorneys with fear that representation of the citizens of St. Louis County when their government fails them may be chilled simply because Intervenor may be ultimately responsible to pay a significant award of attorney's fees and costs.

      i.    *Intervenor could have avoided reapportionment litigation.*

The solution to having a federal court judge draw the map after every decennial census is simple, the County Executive can appoint Commissioners who are politically moderate and openly work on reaching a compromise, and don't appoint Commissioners known to be

---

[2] Without a breakdown of partner verses associate time it is difficult to calculate the 2002 fee award in 2022 dollars. While the Court can undertake its own calculation, counsel believes an attorney with similar experience charging $200 hourly in 2002 would be charging well in excess of the 2022 Lawyers Weekly median hourly partner rate of $450.

5

exceedingly partisan. Intervenor has control over the reapportionment process. The County Executive is tasked with appointing Commissioners and has the ability to appoint moderate Commissioners. The County Executive chose to appoint exceedingly partisan Commissioners. Moreover, if Intervenor is legitimately concerned about having to pay for costly litigation the County Executive should have taken an active role to work with the Commissioners to reach a compromise. Appointing exceedingly partisan Commissioners and encouraging the use of non-Charter criteria overlayed by a desire to move a councilman out of his district is a recipe for disaster.

                **ii.**    *It was reasonable for Counsel to address the issues surrounding the compromise meeting/map.*

Despite having Commissioners who were exceedingly partisan, a compromise was almost reached. According to the Republican Commissioners, they approved a compromise map. According to the Democratic Commissioners, there was no compromise, and the map that came out of the bipartisan subcommittee was rejected. It was reasonable to conclude the issues surrounding the map that came out of the bipartisan subcommittee and why the Democratic Commissioners rejected such map needed to be addressed.

First, it is reasonable for Counsel to believe that the evidence surrounding the bipartisan subcommittee and resulting map could be helpful to aid the Court. It was clear from the start that the Court would be asked to pick a map from the six maps presented by the Commissioners. The Compromise Map, and the process that lead to its creation, were important since it was a map the Court would be asked to adopt and the process that lead to its creation presented evidence the Court could weigh when considering the map. In addition, if the Court had to draw a map the reasons for the boundaries in the Compromise Map could be helpful when drawing new boundaries.

Second, the citizens of St. Louis County participate in the redistricting process and have a right to know what the Commission did and why, including why or why not a compromise or agreement was not reached.

Overall, the reapportionment process was destined to create contested issues that needed to be addressed that are unique to the 2022 reapportionment litigation. The mix of exceedingly partisan Commissioners and the County Executive's failure to encourage compromise was destined to impact the litigation. It was reasonable for Counsel to spend time on the issues surrounding the Compromise Map. However, this is just one of several issues inherent in the 2022 reapportionment process that resulted in additional reasonable legal services.

**B.    Additional issues contributed to the reasonable need for legal services.**

    **i.    *The Court could be asked to adopt Map D-v1.***

Intervenor complains it is not reasonable "to inflate fees charged" for the "conspiracy claim".[3] [Intervenor Response, ECF No. 93, Page ID# 717]. However, only 3 hours were billed for the "conspiracy claim", and when incurred the services were reasonable.

Counsel's services started on November 23, 2021. From the outset it was apparent the Court would be asked to adopt a map. It was not known whether the Bowman Plaintiffs would request the Court adopt Map D-v1. Map D-v1 made significant boundary changes, including destroying minority districts and blatantly violating the Voting Rights Act, and is the primary reason Councilperson Days joined the Arps Plaintiffs.

In early December Counsel requested the Bowman Plaintiffs disclose whether Map D-v1 would be submitted and was told no decision had been made (as evidenced by the Case Management Order in section I.4.(a) which was included because Counsel expressed a concern

---

[3] Intervenor's reference to the "conspiracy claim" is the only specific reference to an issue where the fees are "outside the realm of 'reasonable' under the law. [Intervenor Response, ECF No. 93, Page ID# 717].

7

about whether Map D-v1 would be submitted [ECF No. 21]).  Due to the uncertainty about the submission of Map D-v1 an Amended Complaint was filed on December 9, 2021.  At the time it was reasonable to file the Amended Complaint as it would help dissuade the submission of Map D-v1 and help protect the citizens of St. Louis County if Map D-v1 was submitted.  On December 8 and 9, 2021 Counsel billed 3 hours to research, draft and file the Amended Complaint.  Counsel did not bill time for communications with Ms. Dueker concerning the Amended Complaint.

Other than the time spent on December 8 and 9, no other time was billed for the so called "conspiracy" count.  Counsel did not charge for the time spent responding to the motion to dismiss the "conspiracy" count (1/11/2021) or on the Court's subsequent order.  On December 29, 2021, Counsel learned the Bowman Plaintiffs were not likely to submit Map D-v1, subject to confirmation by Dr. Kimball whose opinion was not disclosed until January 15, 2022.  Discovery started after January 15, 2022, so no time was spent during discovery on the "conspiracy" count.

Simply put, the 3 hours billed for the "conspiracy claim" were reasonable when incurred, and Counsel did not include any other charge for the "conspiracy Claim" in the Exhibit B Invoice.

        **ii.** ***The Bowman Plaintiffs were trying to change the law by seeking to have the Court apply the non-traditional factor of municipal boundaries.***

It was reasonable for the Arps Plaintiffs to address the Bowman Plaintiffs attempt to change the law by having the Court apply the non-traditional factor of municipal boundaries.  Apparently, the use of municipal boundaries was a significant factor in the Commissioners not being able to reach an agreement.  While the Commissioners can redraw the Districts following municipal boundaries - and the case law indicates a federal court is limited to the traditional

8

Charter factors - the Court could have found municipal boundaries should be followed. The use of municipal boundaries has been legislated for statewide elections, and while it may be a good idea to use municipal boundaries for St. Louis County elections, it currently is not a Charter factor. Notably, Intervenor acknowledges the 48 hours incurred by Dr. Kimball were necessary. [Intervenor Response, ECF No. 93, Page ID#714]. Since Dr. Kimball spent a considerable amount of his time on the issue of using municipal boundaries, Intervenor tacitly admits the time spent on this issue was reasonable. Counsel's time spent on the issues surrounding municipal boundaries was reasonable.

> iii. *The issue of changing the District boundaries to move Mr. Fitch out of his District is a factor that goes to political motivation.*

The issue surrounding the District boundary change to cause Mr. Fitch to reside outside of his District, while somewhat mischaracterized, necessitated reasonable fees. First, it should be pointed out that Counsel *never argued* that the Republican maps were free from political considerations - nowhere during trial did Counsel contend the Republican maps were free from political considerations. See, T. p.14, L 2-15; T. p.190, L. 11, 12; T. p. 191, L. 1-4; T. p.195, L. 7-13.

The statement that the Republican maps were free from political considerations is a reference to Proposed Finding of Fact number 34 and has been taken out of context. [ECF No. 66, Page ID#347]. This was never intended to be argument; it was intended to be a proposed fact the finding of which was necessary for the Court to adopt Map R-v1. This is reflected by Proposed Finding of Fact number 35 that states the Compromise Map was free from political considerations [ECF No. 66, Page ID#347], in Proposed Conclusions of Law number 22 that states "[e]vidence of political considerations are irrelevant when deciding the factors of equality,

9

compactness and racial fairness, which are the only factors the Court can consider. *Fletcher v. Golder*, 959 F.2d 106, 109 (8th Cir. 1992)" and in Proposed Conclusions of Law number 23 that states "[e]vidence of political considerations are relevant when it calls into question the genuineness of the Bowman Plaintiffs' claim that respect for municipal boundaries makes its map/plan better. *See*, *Corbett*, 202 F. Supp.2d at 988" [ECF No. 66, Page ID#351]. There is no reference in the Proposed Conclusions of Law about the Republican maps being free from political considerations. When the Proposed Finding of Fact and Conclusions of Law are read together, and the argument at trial is considered, it becomes clear that the point Counsel was attempting to make was that the Republican maps were drawn based on Charter factors so evidence of political considerations, if any, was irrelevant.

Second, while the result of the time spent surrounding the boundary change to the "thumb" could keep Mr. Fitch in his District, the relevant legal issue directly bore on political motivation. The evidence showed while Mr. Fitch preferred to stay in his District, he testified he didn't care and could move if the boundary changed. The evidence about the "thumb" boundary change was to show the Court the Democratic maps could not be adopted because there was no way to remove the issue of political motivation in a Democratic map that draws a sitting Republican councilperson up for reelection out of his home District. The time spent on the issue surrounding the boundary change to the "thumb" was reasonable.

    **iv.**  *No unnecessary or redundant services were billed.*

Other than Intervenor's complaint about the "conspiracy claim", Intervenor neither mentions any other specific issue or area that resulted in unreasonable fees nor points to any specific time entry that is redundant or unnecessary. Examination of Counsel's Invoice reflects no payment is sought for communications with Ms. Dueker or CMJ or associated with the

depositions of Ms. Walker and Mr. Page. The Invoice does not reflect any redundant or overlapping services.

To the extent Intervenor implies the Arps Plaintiffs pursued matters that resulted in unreasonable services, examination of the Invoice shows otherwise. Out of 171 hours, around 40 hours are for motions, pleadings, map related issues and services provided before receipt of Dr. Kimball's report, around 40 hours are for discovery related services after receiving Dr. Kimball's report and before trial preparation, with approximately 14 hours associated with the depositions of the Arps Plaintiffs and 10 hours associated with Dr. Kimball's report and deposition. The remaining hours are for services associated with preparing for and attending trial.[4]

### C. The Fee is Reasonable and the Invoice Should Be Paid in Full.

Intervenor spends a significant portion of the Intervenor Response to compare the hours billed in this action with the fee awards in *Corbett* and *Stenger*. Contrary to Intervenor's assumption, Counsel's Invoice is reasonable when considered with the fee awards in *Corbett* and *Stenger* and the fee requests from counsel for the Bowman Plaintiffs and counsel for Ms. Days.

As previously pointed out, in *Corbett* Judge Perry approved an award for 840 hours and in *Stenger* Judge Adelman approved an award for 252.8 hours. Though *Corbett* had the benefit of the *Fletcher* decision, there was about three days spent in trial. *Stenger*, on the other hand, was essentially uncontested. In this action the parties submitted a total of 682 hours. This is within the range of *Corbett* and *Stenger* for a one day trial addressing expert testimony, competing maps, and the consideration of non-traditional factors and communities of interest.

Further, considering the Arps Plaintiffs billed for 200 hours, Ms. Days billed for 78 hours, and the Bowman Plaintiffs billed for 404.7 hours divided 171.3 for lead counsel, 191.7 for

---

[4] The 29 hours billed by CMJ was primarily to assist with trial.

11

co-counsel and 41.7 for paralegal services, the Arps Plaintiffs award of 171 hours for lead counsel and 29 hours for associate counsel is reasonable.  If 252.8 hours is the baseline for an uncontested action and 849 hours the ceiling for a contested action with three days of trial, how can 640 hours for a contested action with one day of trial be unreasonable.

Putting aside a comparison of fee awards in *Corbett* and *Stenger* with the fee award requested here, isn't the real question what, if any, services did Counsel bill for that were unreasonable, excessive or redundant?  There is no evidence that Counsel spent an excessive amount of time on a task or duplicating the work done by others.  Intervenor did not present any persuasive evidence or argument in support of its assessment of the time spent on any particular issue, or of any special circumstance that may warrant a reduction.  All of the issues raised by a party were ultimately presented to the Court and were all pertinent to a legal issue or fact question relevant to the Court's determination.  Counsel points out that he attempted to reduce the hours by excluding any hours billed for matters associated with the "conspiracy claim" after the filing of the Amended Petition, by excluding the hours for services related to the depositions of Ms. Walker and Mr. Page, and by excluding inner office communications and communications with attorneys other than for the Bowman Plaintiffs.  Arps Plaintiffs litigated in good faith for a desired outcome, and the rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  *Hensley*, 461 U.S. at 435.

2. **COUNSEL'S HOURLY RATE IS REASONABLE AND WITHIN PREVAILING MARKET RATES**

Intervenor's argument to reduce counsel's hourly rate from $485/$495 to $300 per hour is without merit.[5]  Putting aside that Intervenor offers no evidence or support of any kind for its

---

[5] Counsel's associate CMJ time was billed at $310 per hour.  CMJ graduated from law school in 2013 and his experience is primarily in contested civil litigation matters.  Counsel bills $290 to $350 hourly for CMJ's time depending on the nature of the case.

12

assertion that $300 is an acceptable rate, the Court will use its own discretion to determine what the reasonable hourly rate should be, courts historically calculate the reasonable hourly fee according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

When determining the prevailing market rates in the St. Louis area, the Court can consider the hourly rate of $630/$695 of Gerald Greiman (admitted to bar in 1975), $410 charged by Jane Dueker (admitted to bar in 1992),[6] $470/$535 of Thomas Hayde (admitted to bar in 1975, and $260/$280 of Melanie Cummins (paralegal).

The Court may also consider other recent Eastern District decisions. *See Fernandez*, 538 F. Supp. 3d at 905 (In 2021 lead counsel approved at $575, co-counsel at $475); *Smith v. Phelps County Sheriff's Department*, 2021 WL 3617413, at *4 (E.D. Mo. August 16, 2021)("Based on its review of recent cases, the 2019 Missouri Law Weekly survey, and its experience and knowledge of prevailing rates in the community, the Court finds that a reasonable hourly rate in this matter is $450 for both attorneys."); *Chestnut v. Wallace*, 2020 WL 5801041, at *3 (E.D. Mo. September 29, 2020)($450 reasonable); *Robinson v. City of St. Louis*, 2020 WL 4673823, at *4 (E.D. Mo. August 12, 2020)(Lead attorney graduated law school in 2007, co-counsel graduated law school in 2010, court found $400 reasonable.); *Holmes v. Slay*, 2017 WL 994473, at *3 (E.D. Mo. March 15, 2017)(Lead counsel licensed in 1993 hourly rate $520 with $450 approved, co-counsel approved at $400, $350, and $335.); *S.M. v. Lincoln County*, 2016 WL 6441587, at *7 (E.D. Mo. November 1, 2016)(Lead counsel with 30 years' experience approved at $450, co-counsel with 22 years' experience at $375 and with 7 years' experience at $350.);

---

[6] It should be noted that in *Stenger v. Kellett*, 2012 WL 601017, at *8 (E.D. Mo. February 23, 2012) as lead counsel; Ms. Dueker was approved at $400 per hour.

13

*Fletcher v. Tomlinson*, 2016 WL 6069497, at *6 (E.D. Mo. October 14, 2016)(Lead counsel approved at $450, co-counsel at $250.); *Abdullah v. County of St. Louis*, 2015 WL 5638064, at *2 (E.D. Mo. September 24, 2015)(Lead counsel approved at $350).

Clearly, Intervenor's suggestion that $300 per hour is within the prevailing market rates in the St. Louis area is not supported by previous decisions. In 2015 lead counsel was approved at $350 and in 2016 lead counsel was approved at $450. In the cited decisions no court approved a hourly rate less than $400 since 2015. In addition, attached as **Exhibit C** is a copy of an article dated November 29, 2021 that appeared in Missouri Lawyers Weekly titled *Billing Rates 2021* which states the St. Louis median partner rate is $450 per hour.

Based on the above referenced hourly rates, given that Ms. Dueker was approved at $400 per hour in the previous reapportionment case ten years ago, and given the *average* partner charges a hourly rate of $450, an hourly rate of $485/$495 is squarely within the prevailing market rates in the St. Louis area for a trial attorney with over 33 years of experience in complex civil litigation who has been a partner in a St. Louis area law firm since 1994.[7]

## IV   CONCLUSION

For the reasons set forth herein, the Arps Plaintiffs respectfully request the Court enter an award of attorneys' fees and costs as described in the Invoice.

---

[7] Attached as **Exhibit C** is a copy of an article dated November 29, 2021 that appeared in Missouri Lawyers Weekly titled *Billing Rates 2021* which states the median partner rate charged $450 per hour.

                          **SPOONER LAW, LLC**

By: */s/ Jack B. Spooner*
    Jack B. Spooner    #38382MO
    34 North Brentwood Blvd., Suite 210
    St. Louis, Missouri 63105
    Phone: (314) 725-4300
    Facsimile: (314)725-4301
    Email: jbs@spoonerlawllc.com
    ***Attorneys for Arps Plaintiffs***

## CERTIFICATE OF SERVICE

The undersigned certifies that he signed the original foregoing pleading and that on this 29th day of April 2022 a copy of same was served on all counsel of record **XX** by electronic transmission through the CM/ECF system and/or **XX** by electronic transmission to the following:

**Gerald F. Greiman**
**Thomas W. Hayde**
SPENCER FANE LLP
Email: ggreiman@spencerfane.com
Email: thayde@spencerfane.com
***Attorneys for Bowman Plaintiffs***

**Steven W. Garrett**
**Edward J. Sluys**
CURTIS, HEINZ, GARRETT & O'KEEFE, P.C.
Email: sgarrett@chgolaw.com
Email: esluys@chgolaw.com
***Attorneys for Defendants***

**Jane E. Dueker**
JANE DUEKER, LLC
Email: janedueker@gmail.com
***Co-counsel for Arps Plaintiffs***
***Rita Heard Days***

                        /s/ *Jack B. Spooner*

15